UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

VICKIE MILLER and ROXANA PETTIT, )
individually and on behalf of similarly )
situated individuals, )
       Plaintiffs, )
        )
   vs. )      3:09-cv-0111-RLY-WGH
       )
PROFESSIONAL TRANSPORTATION, )
INC., and RONALD D. ROMAIN, )
individually and as President and Secretary )
of PROFESSIONAL TRANSPORTATION, )
INC., )
       Defendants.

**ENTRY ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
and DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

This is an action to collect unpaid overtime wages, liquidated damages and attorney fees, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA") for the class of drivers employed by Professional Transportation, Inc. ("PTI") and Ronald Romain (collectively "Defendants") during the applicable statutory period. Plaintiffs also bring a common law claim for breach of implied contract or, in the alternative, quantum meruit for Defendants not paying wages due for work performed and required by federal regulation. Lastly, Plaintiffs seek statutory damages and/or attorney fees for work performed and unpaid in those states where such statutory damages and/or attorney fees are permitted. The parties' motions for partial summary judgment involve

only issues related to established exemptions to the provisions of 29 U.S.C. § 207, requiring an employer to pay overtime compensation. PTI contends that the rail carrier exemption, the terminal exemption, and the motor carrier exemption each provide separate and independent grounds for precluding recovery of overtime wages and defeating Plaintiffs' FLSA claim. Plaintiffs contend that these exemptions do not apply to them, and that therefore, they are entitled to overtime wages under the FLSA. For the reasons set forth below, the court finds that the Plaintiffs are not subject to the motor carrier exemption, and thus, are entitled to overtime pay pursuant to the FLSA.

**I.     Facts**

1. PTI is in the business of transporting railroad crews and railroad equipment to railroad terminals, hotels, motels, restaurants, and along rail lines. (Affidavit of Robert S. Tevault ("Tevault Aff.") ¶ 7).

2. PTI provides these rail crew transportation services pursuant to written contracts with federally regulated railroads, including Union Pacific Railroad Company, CSX Transportation, Inc., and Norfolk Southern Railway Company. PTI also has separate written agreements with brokers to provide railroad crew transportation services to the Kansas City Southern Railway Co., CP Rail Systems (Soo Line), and Amtrak. Approximately 99.7% of PTI's business is covered by these six contracts. (*Id.* ¶ 5).

3. When PTI provides these rail crew transportation services under its contracts with the rail carriers, PTI is not permitted to transport members of the public unless

   instructed to do so by the rail carrier.  (*Id.* ¶ 6).

4. Plaintiffs are current and former drivers for PTI.  (Declaration of Vickie Miller ("Miller Dec.") ¶ 3; Declaration of Roxana Pettit ("Pettit Dec.") ¶ 3; Declaration of Sue Whitaker ("Whitaker Dec.") ¶ 3; and Declaration of Hurshel Naylor ("Naylor Dec.") ¶ 3).

5. Plaintiffs' work is primarily performed in seven (7) passenger vans that have a gross vehicle weight of less than 10,000 pounds.  (Miller Dec. ¶¶ 6, 16; Pettit Dec. ¶¶ 6, 16; Whitaker Dec. ¶¶ 6, 16; Naylor Dec. ¶¶ 6, 16; Tevault Aff. ¶ 17).

6. Plaintiffs are employed by PTI as Designated Yard Van drivers ("DYV drivers") and/or Over the Road drivers ("OTR drivers").  (Tevault Aff. ¶ 10).

7. DYV drivers shuttle railroad personnel by van within the confines of a single railroad yard (or terminal) as well as short distances, generally within a 25-mile radius of the terminal, between the yard and local establishments.  (*Id.* ¶ 11).  DYV drivers are paid on an hourly basis.  (Miller Dec. ¶ 18; Pettit Dec. ¶ 18; Whitaker Dec. ¶ 18; Naylor Dec. ¶ 18).

8. OTR drivers transport railroad crews by van to and from the railroad yards, including transporting railroad crews between railroad yards in different locations (sometimes in different states) and to intermittent sites along rail lines.  A substantial number of PTI's OTR drivers cross state lines while transporting railroad crews.  (Tevault Aff. ¶ 13).

9. OTR drivers are paid in a combination of a set amount per mile and a set amount

    per hour for "wait time " – i.e., non-driving time.  (Miller Dec. ¶ 17; Pettit Dec. ¶

    17; Whitaker Dec. ¶ 17; Naylor Dec. ¶ 17).

10. As employees for PTI, drivers who have contacted Plaintiffs' counsel have not and

    did not receive compensation for any hours worked over 40 in a seven-day period.

    (Miller Dec. ¶ 36; Pettit Dec. ¶ 36; Whitaker Dec. ¶ 33; Naylor Dec. ¶ 33).

11. PTI did not have knowledge that there was any legislative activity with respect to

    the long-standing exemption from overtime pay requirements until after August 9,

    2006.  (Tevault Aff. ¶ 18).

## II.  Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In determining whether a genuine issue of material fact exists, the court must view the record and all reasonable inferences in the light most favorable to the non-moving party. *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).  The moving party bears the burden of demonstrating the "absence of evidence on an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-moving party may not, however, simply rest on the pleadings, but must demonstrate by

specific factual allegations that a genuine issue of material fact exists for trial. *Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994) (citing *Celotex*, 477 U.S. at 322)).

### III. Discussion

Defendants argue that the motor carrier exemption of the FLSA, 29 U.S.C. § 213(b)(1), the rail carrier exemption of the FLSA, 29 U.S.C. § 213(b)(2), and the terminal exemption of the FLSA, 29 U.S.C. § 213(b)(2), defeat Plaintiffs' claim for overtime compensation. The court will first address the motor carrier exemption.

#### A. Motor Carrier Exemption

The overtime provisions of the FLSA do not apply to "any person with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). This exemption is known as the motor carrier exemption. Defendants, as the party seeking to invoke the protections of the exemption, carry the burden of showing that they are entitled to the exemption. *Vidinliev v. Carey Int'l, Inc.*, 581 F. Supp. 2d 1281, 1285 (N.D. Ga. 2008) (citing *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 594 (11th Cir. 1995)).

##### 1. Before August 10, 2005

Until August 10, 2005, "motor carrier" was defined as a "person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12) (2004). Thus, an employee who drove a motor vehicle as a major part of his/her employment was

5

considered to be exempt from the overtime provisions of the FLSA. Plaintiffs concede that they were not entitled to the overtime provisions of the FLSA before August 10, 2005.

### 2. After August 10, 2005

Effective August 10, 2005, Congress, through the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), amended the definition of "motor carrier" by inserting the phrase "commercial motor carrier" for "motor carrier." 49 U.S.C. § 13102(14) (2005). As a result, the definition of "motor carrier" in § 13102, after August 10, 2005, read as follows: "The term 'motor carrier' means a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation." 49 U.S.C. § 13102(14). Section 31132 defines a "commercial motor vehicle" as:

> a self-propelled or towed vehicles used on the highways in interstate commerce to transport passengers or property, if the vehicle –
>
> (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;
>
> (B) is designated or used to transport more than 8 passengers (including the driver) for compensation;
>
> (C) is designated or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or
>
> (D) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

49 U.S.C. § 31132(1). As noted by the district court in *Tews v. Renzenberger, Inc.*, "[a]fter the passage of SAFETEA-LU, then, many employees who were previously exempt under the prior definition of 'motor carrier' lost their exempt status because they did not operate 'commercial motor vehicles.'" 592 F. Supp. 2d 1331, 1344 (D. Kan. 2009). It is undisputed that the Plaintiffs in this case did not operate "commercial motor vehicles" on August 10, 2005, or at any time thereafter. Thus, it would appear that Plaintiffs were entitled to the overtime provisions of the FLSA after August 10, 2005.

### 3. June 6, 2008 Amendment

On June 6, 2008, the Technical Corrections Act of 2008, Pub.L. 110-224, 122 Stat. 1572 ("TCA"), became effective. Section 305 of the TCA replaced the previously changed language in SAFETEA-LU and restored the "motor carrier" language in lieu of "commercial motor vehicle." However, Section 306 of the TCA provides that "the Fair Labor Standards Act of 1938 (29 U.S.C. § 207) shall apply to a covered employee notwithstanding section 13(b)(1) of that Act (29 U.S.C. § 213(b)(1))." Section 306, therefore, makes "covered employees" eligible for overtime wages if they so qualify. To qualify as a "covered employee," the individual employee must be:

(1) . . . employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by Section 305;

(2) whose work, in whole or part, is defined as:

(A) that of a driver, driver's helper, loader, or mechanic; and

7

        (B)    affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles –

            (i)    designed or used to transport more than 8 passengers (including the driver) for compensation;

            (ii)    designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or

            (iii)    used in transporting material . . . .; and

    (3)    who performs duties on motor vehicles weighing less than 10,000 pounds or less.

Pub.L 110-224, 122 Stat. 1572, Section 306(c).

        The net result of this change is that employees, who drive vehicles denoted in the Act as part of their employment that were once exempt from overtime prior to the passage of SAFETEA-LU, are now eligible for the benefits of overtime compensation by virtue of the fact that they are "covered employees." Covered employees are those that drive vehicles weighing 10,000 pounds gross vehicle weight or less and are designed or used to transport 8 or fewer passengers, including the driver. *See Glanville v. Dupar, Inc.*, 2009 U.S. Dist. LEXIS 88408, at *11 (S.D. Tex. Sept. 25, 2009) ("TCA reconfirmed that the [motor carrier] exemption does not apply to drivers operating motor vehicles that weigh 10,000 pounds or less."). In the instant case, Plaintiffs are covered employees. The evidence is undisputed that Plaintiffs are/were employed by a motor carrier (PTI) as drivers of vehicles (vans) weighing 10,000 pounds or less on public highways in interstate

8

or foreign commerce.

### 4. Retroactive Effect

This is not the end of the story, however. PTI contends that Congress meant for the TCA modification of the term "motor carrier" to be applied retroactively such that the definition of "motor carrier" applies to claims even after August 10, 2005. If PTI is correct, then the Plaintiffs would be exempt from the overtime provisions of the FLSA under the motor carrier exception both before and after August 10, 2005 – as if SAFETEA-LU were never enacted.

Whether a statute is retroactive is a question of law. *Faiz-Mohammad v. Ashcroft*, 395 F.3d 799, 801 (7th Cir. 2005) (citing *Arevalo v. Ashcroft*, 344 F.3d 1, 10 (1st Cir. 2003)). In making this determination, the court employs a two-part test set forth by the Supreme Court in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). First, the court must determine whether Congress has spoken as to whether the statute should have retroactive effect. *Faiz-Mohammad*, 395 F.3d at 801 (citing *Landgraf*, 511 U.S. at 280). If the statute is silent on this issue, the court must next consider whether retroactive application of the statute "would impair rights a party possessed when he acted, [would] increase a party's liability for past conduct, or [would] impose new duties with respect to transactions already completed." *Id*. at 802 (quoting *Landgraf*, 511 U.S. at 280). If application of the statute creates a retroactive effect, "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280.

In support of their argument that Section 305 of the TCA applies retroactively, Defendants focus on § 121(b)(2) of the TCA, which states,

> SEC. 121.  EFFECTIVE DATE.
>
> (a) IN GENERAL – Except as otherwise provided in this Act (including subsection (b)), this Act and the amendments made by this Act take effect on the date of enactment of this Act.
>
> (b) EXCEPTION –
>
>     (1) IN GENERAL – The amendments made by this Act (other than the amendments made by sections 101(g), 101(m)(1)(H), 103, 105, 109, and 201(o)) to the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (Public Law 109-59; 119 Stat. 1144) shall –
>
>         (A) take effect as of the date of enactment of that Act; and
>
>         (B) be treated as being included in that Act as of that date.
>
>     (2) EFFECT OF AMENDMENTS – Each provision of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (Public Law 109-59; 119 Stat. 1144) (including the amendments made by that Act) (as in effect on the day before the date of enactment of this Act) that is amended by this Act (other than sections 101(g), 101(m)(1)(H), 103, 105, 109, and 201(o)) shall be treated as not being enacted.

Given the language above, it is not clear that Congress intended for Section 305(b) of the TCA to apply retroactively.  While Section 121 of the TCA establishes that each provision of the SAFETEA-LU "shall be treated as not being enacted," Section 306(c) of the TCA establishes no liability for overtime violations of the FLSA, for certain covered employees, if: (1) the violation occurred within one year beginning August 10, 2005; and

(2) as of the date of the violation, the employer did not have actual knowledge that it was subject to the requirements of such section with respect to those employees. *Id.* As noted by the court in *Vidinliev*:

> If the definition of motor carrier in section 305 applied retroactively, then the one-year defense in section 306 is nothing more than surplusage. A legal defense is meaningless unless there is actual underlying liability. In this case, the one-year defense assumes that, as a result of the SAFETEA-LU definition, employers are liable for overtime pay to employees whose work primarily involves non-commercial motor vehicles. But that liability disappears if § 305 applies retroactively. . . . Under these circumstances, applying section 305 retroactively would violate the rule that a statute should be 'interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage.' *United States v. Canals-Jimenez*, 943 F.2d 1284, 1286 (11th Cir. 1991).

581 F. Supp. 2d at 1291; *see also Tews*, 592 F. Supp. 2d at 1347. For this reason, and for the additional reasons cited by the *Vidinliev* and *Tews* courts, the court finds that Congress did not clearly and unambiguously indicate that Section 305 of the TCA should apply retroactively. Thus, the TCA takes effect on the date of its enactment, June 6, 2008.

### 5. Defendants' Knowledge

The remaining issue for the court is the commencement of the Plaintiffs' claim for overtime. As noted above, Section 306(b) of the TCA provides a one-year safe harbor (August 10, 2005 to August 10, 2006) for an employer who, on the date of the violation, did not have knowledge of the overtime requirements found in Section 207 of the FLSA. The only evidence before the court is from the Affidavit of Robert Tevault, Vice President of PTI, who states that "PTI did not have knowledge that there was any

legislative activity with respect to the long-standing exemption from overtime pay requirements until after August 9, 2006." (Tevault Aff. ¶ 18). As this is undisputed, the court hereby finds, as a matter of law, that the Defendants' DYV and OTR drivers (Plaintiffs) are entitled to overtime compensation, to the extent each member falls within the class, pursuant to Section 207 of the FLSA, from August 10, 2006, to the present.

### B.   Rail Carrier Exemption

Section 213(b)(2) of the FLSA exempts "any employee of an employer engaged in the operation of a rail carrier subject to part A of subtitle IV of Title 49." Part A of subtitle IV of Title 49 contains a definition section codified at 49 U.S.C. § 10102. Section 5 defines "rail carrier" as "a person providing common carrier railroad transportation for compensation, but does not include street, suburban, or interurban electric railways not operated as part of the general system of rail transportation." 49 U.S.C. § 10102(5). Thus, in order for Defendants to be entitled to this exemption, they must show that they provide "common carrier" railroad transportation services for compensation.

"A common carrier is defined as an entity that holds itself out to the public as engaged in the business of transporting persons from place to place for compensation and that offers its service to the public in general." *Connolly v. Samuelson*, 671 F.Supp. 1312, 1315 (D. Kan. 1987) (citing 13 Am.Jur.2d *Carriers* § 2 at 560); *see also Strykowski v. Ne. Ill. Reg. Commuter R.R. Corp.*, 1994 WL 287395, at *8 (7th Cir. June 28, 1994) (noting that under the Federal Employer's Liability Act, a common carrier is defined as "one who

holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public, generally.") (internal quotation and citations omitted). Defendants contend that PTI is a common carrier because PTI's fleet of motor vehicles used for transporting railroad crews "are operated under common carrier licenses or other authority issued by states in which PTI conducts its transportation services." (Tevault Aff. ¶ 17). However, PTI admitted in its statement of facts that 99.7% of its business is providing railroad crew transportation services pursuant to its contracts with the railroads, and that it is not allowed to transport members of the public unless otherwise instructed to do so by the rail carrier. (*Id*. ¶¶ 5-6). There is no evidence in the record that Plaintiffs ever transported a member of the public at the direction of a rail carrier during the class period. Accordingly, the court finds that PTI is not a common carrier, and thus, does not meet the definition of a "rail carrier" for purposes of the rail carrier exemption. Defendants' DYV and OTR drivers are thus not exempt from the overtime provisions of the FLSA under the rail carrier exemption.

### C. Terminal Area Exemption

Like the rail carrier exemption, an employer may demonstrate that it is subject to part A of subtitle IV of Title 49 by showing that "its activities fall within the 'terminal area' exception to jurisdiction under the Motor Carrier Act." *Scott v. Raudin McCormick, Inc.*, 2009 WL 3561301, at * 4 (D. Kan. Oct. 30, 2009); 49 U.S.C. § 13503(b)(1). The Motor Carrier Act's terminal area exemption provides, in relevant part:

(1) Except to the extent provided by paragraph (2) of this subsection,

13

> neither the Secretary [of Transportation] nor the [Surface Transportation] Board has jurisdiction under this subchapter over transportation by motor vehicle provided in a terminal area when the transportation –
>
> (A) is a transfer, collection, or delivery; and
>
> (B) is provided by a person as an agent or under other arrangement for –
>
> (i) a rail carrier subject to jurisdiction under chapter 105 of this title.
>
> . . .
>
> (2) Transportation exempt from jurisdiction under paragraph (1) of this subsection is considered transportation provided by the carrier . . . for whom the transportation was provided and is subject to jurisdiction under chapter 105 of this title when provided for such a rail carrier . . . .

49 U.S.C. § 13503(b). The effect of this subsection places the Surface Transportation Board's jurisdiction over rail carriers under chapter 105 of part A of subtitle IV of Title 49. Thus, "an employer that is able to demonstrate that it provides motor vehicle transportation pursuant to 49 U.S.C. § 13503(b) is exempt from the overtime provisions of the FLSA in providing that transportation." *Scott*, 2009 WL 3561301, at * 4.

Two recent district court cases from the District of Kansas are directly on point. They are *Tews* and *Scott*, *supra*. The *Tews* court conducted a thorough analysis of the terminal area exemption, and, relying in part on the Seventh Circuit's decision in *Cederblade v. Parmelee Transp. Corp.*, 166 F.2d 554 (7th Cir. 1948), found that the terminal area exemption applies only if the employer provides transportation services within a terminal area for a rail carrier subject to jurisdiction under 49 U.S.C. § 13503(b).

14

The *Scott* court, relying on *Tews* and *Cederblade*, came to the same conclusion. 2009 WL 3561301, at *6 ("Therefore, consistent with the Court's analysis in *Tews*, we find that an employer is only exempt from the overtime provisions of the FLSA under the terminal area exception of the [Motor Carrier Act] when providing transportation service by motor vehicle within a terminal area, and only for those employees furnishing such service, providing 49 U.S.C. § 13503(b)(1)(B) is also satisfied."). The court finds these cases highly persuasive, and adopts the reasoning set forth therein.

Defendants employ DYV drivers and OTR drivers. DYV drivers provide railroad crew transportation services in a terminal area, while OTR drivers provide railroad crew transportation services outside of a terminal area. The court finds, based upon the foregoing, that Defendants' DYV drivers, when providing services in a terminal area, are exempt from the overtime provisions of the FLSA under the terminal area exemption. However, Defendants' OTR drivers are not exempt from the FLSA's overtime provisions for the transportation service they perform outside of the rail carriers' terminal area.

## IV. Conclusion

For the reasons set forth above, the court hereby **GRANTS in part** Plaintiffs' Motion for Partial Summary Judgment (Docket # 110) and **DENIES in part** Defendants' Cross-Motion for Partial Summary Judgment (Docket # 150).

**SO ORDERED** this  25th   day of August 2010.

                        RICHARD L. YOUNG, CHIEF JUDGE
                        United States District Court
                        Southern District of Indiana

Electronic Copies to:

Joseph H. Cassell
REDMOND & NAZAR, LLP
jhcassell@redmondnazar.com

Linda Joy Cooley
KRIEG DEVAULT, LLP
ljc@kdlegal.com

Rebecca Biller Elmore
KRIEG DEVAULT LLP
relmore@kdlegal.com

Libby Yin Mote
KRIEG DEVAULT LLP
lmote@kdlegal.com

Terry D. Smith
LAW OFFICES OF TERRY D. SMITH
tsmith@smithlawoffices.net